Filed 8/17/15  In re Serena H. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re SERENA H. et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CINDY F., <br><br> Defendant and Appellant. | F071246 <br><br> (Super. Ct. Nos. JJV067180B, JJV067180C) <br><br><br> **OPINION** |

**THE COURT**\*

APPEAL from orders of the Superior Court of Tulare County.  Hugo J. Loza, Commissioner.

Sharon S. Rollo, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Gomes, Acting P.J., Kane, J. and Detjen, J.

Cindy F. appealed from the juvenile court's order terminating her parental rights (Welf. & Inst. Code, § 366.26)[1] as to her five-year-old daughter Serena H. and her two-year-old son Ray H. After reviewing the juvenile court record, Cindy's court-appointed counsel informed this court she could find no arguable issues to raise on Cindy's behalf. This court granted Cindy leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Cindy filed a letter in which she asks that her children not be adopted and that she be given another chance to prove that she can properly parent them. She explains in her letter that she was grieving the death of the children's father when they were removed from her custody in July 2013. She admits that she made mistakes but believes herself to be a good mother. She further explains that she had a rough childhood; she was made a ward of the state after suffering abuse by a relative and became a mother at age 13. Despite that, she raised her children and her siblings for the past eight to nine years while going to high school. She informs this court that she is incarcerated and expected to be released in January 2016. Meanwhile, she is participating in "NA, Sisters of Unity, Criminal thinking [and] Grief and Loss" and is on a waiting list for a substance abuse program.

We conclude Cindy failed to address the termination proceedings or set forth a good cause showing that any arguable issue of reversible error arose from the termination hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated in July 2013 after a social worker from the Tulare County Health and Human Services Agency (agency) responded to multiple

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

referrals regarding Cindy and Cindy's mother. Cindy is the mother of Anthony,[2] Serena and Ray and the caregiver to her younger siblings, Robert and Jesse.

When the social worker arrived at the home, then 11-year-old Jesse opened the door and greeted her. He said Cindy was at a barbeque with friends nearby and he was taking care of then three-year-old Serena and eight-month-old Ray. The social worker observed that the younger children had dirty clothes, feet and legs and Ray was in a walker stepping over spilled dog food. The social worker contacted the police.

A police officer responded. Shortly afterward, Cindy came home. She admitted smoking marijuana the day before and said she had also been drinking alcohol. She said she was very sad because Anthony H., the children's father, died approximately a month and a half before. She had no one to live with and had been staying with a friend. She said she had been the primary caretaker for her siblings since she was about 14 years old. Her mother used drugs and had been in and out of jail throughout her lifetime. Her father was also incarcerated in Nevada. She admitted that she relied on Jesse a lot but said he was the only one on whom she could depend.

Upon examination, Anthony, then eight years of age, and Serena were infested with lice and Ray had an open wound on his bottom that appeared to have been there for a while. Cindy was aware of the children's skin problems and claimed to be treating them.

Anthony, Serena and Ray were taken into protective custody and placed together in foster care. The agency filed a dependency petition on their behalf, alleging Cindy's substance abuse rendered her unable to adequately protect them and provide them with adequate clothing and medical care. (§ 300, subd. (b).)

---

**2** Anthony is not a subject of this appeal. However, we refer to him throughout our summary of the case because the agency's ultimate goal of placing him with Serena and Ray impacted the progression of the dependency proceedings as to them.

The juvenile court ordered the children detained pursuant to the dependency petition. The court also found Anthony H. to be the presumed father of Serena and Ray and Chad A. to be Anthony's biological father. The court ordered the agency to provide Cindy parenting classes and substance abuse services pending further proceedings.

In August 2013, the juvenile court exercised its dependency jurisdiction over the children and ordered Cindy to complete a mental health evaluation and an alcohol and drug assessment and follow any recommended treatment, complete a parenting education program and submit to substance abuse testing. The court also ordered Cindy biweekly supervised visitation and ordered reunification services for Chad. At the conclusion of the hearing, the juvenile court advised Cindy that it could terminate her reunification services after six months if she failed to comply with her case plan requirements. She said she understood.

Over the ensuing three months, Cindy sporadically visited the children and made no effort to initiate her services. In early November 2013, Cindy was arrested for her involvement in an assault which resulted in a stabbing. She was also in possession of seven plastic bindles of methamphetamine and had an active warrant for her arrest. The arresting officer believed she was selling methamphetamine but not using it.

In late November 2013, Cindy was released from custody and began attending classes. She also completed a substance abuse assessment and entered outpatient treatment in early January 2014.

Meanwhile, Chad completed his reunification services and regularly visited Anthony. He wanted more time to develop a strong positive relationship with Anthony. Anthony was cooperative with visiting Chad, but did not want to be placed with him.

In its report for the six-month review hearing, the agency informed the juvenile court that the children's foster parents did not want to adopt the children or enter into a legal guardianship. The agency planned to search for a prospective adoptive family for all three children with the understanding that Anthony may return to Chad's care. The

agency recommended the juvenile court continue reunification services for Chad at the six-month review hearing, but terminate Cindy's for failure to comply. According to the agency, Cindy had not scheduled a mental health assessment, claiming she did not know it was required. In addition, she attended only four of the required 18 parenting sessions and completed only two weeks of outpatient treatment and was not drug testing as required.

In March 2014, the juvenile court conducted a contested six-month review hearing. Cindy testified that after Anthony H. died in May 2013, she turned to alcohol, marijuana and prescription drugs for comfort, but had been clean and sober since August 2013. She had eight more parenting classes to complete the program and denied knowing she had to participate in individual counseling. She said she pled no contest to attempted robbery and possession of methamphetamine for sale but had not been sentenced.

At the conclusion of the hearing, the juvenile court terminated Cindy's reunification services. The court considered the negative affect of Cindy's grief on her ability to comply with her services and credited her with making progress in her parenting classes. However, the court found that she was otherwise noncompliant. The court was also disturbed by the circumstances of her arrest; notably that she was in possession of methamphetamine.

The juvenile court set a section 366.26 hearing as to Serena and Ray and continued Chad's reunification services as to Anthony. The court ordered weekly supervised visits for Cindy unless she was incarcerated. If incarcerated, the agency was ordered to arrange visitation in accordance with the rules of the institution.

In mid-April 2014, Cindy was incarcerated. Prior to that, she regularly visited the children and was attentive to them.

In January 2015, the juvenile court terminated Chad's reunification services and set a section 366.26 hearing as to Anthony for May 2015. The court continued the section 366.26 hearing as to Serena and Ray to February 2015.

5.

In its report for the section 366.26 hearing, the agency informed the juvenile court that Serena and Ray's foster parents wanted to adopt them. Serena and Ray appeared to be happy with them and called them "mom" and "dad." The agency recommended the court free Serena and Ray for adoption.

In February 2015, Cindy appeared in custody at the section 366.26 hearing and testified. She expected to be released from custody no later than January 2016 and possibly as early as July 2015. She said she and the children had a strong relationship before they were removed in July 2013. She visited them weekly for two hours until she was incarcerated in April 2014. She believed it would harm the children to terminate her parental rights because they had already lost one parent and because she had a strong bond with them.

At the conclusion of the hearing, the juvenile court found that Serena and Ray were likely to be adopted and terminated Cindy's parental rights.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If appellant fails to do so, the appeal may be dismissed. (*In re Sade C*. (1996) 13 Cal.4th 952, 994.)

When the juvenile court orders a child removed from parental custody, the court is required to order services to reunify that parent and child absent circumstances not present here. (§ 361.5, subd. (a) & (b).) The duration of reunification services depends on the age of the child at the time of the initial removal and whether a sibling of the child was also removed. When, as here, siblings are removed together and one of the siblings is younger than three years, the juvenile court may terminate reunification services after six months if the parent does not comply with the court-ordered services plan. (§ 361.5, subd. (a)(1)(C).)

6.

In this case, Serena was three years old, but because Ray was under three and because they are a sibling group, the juvenile court could terminate Cindy's reunification services after six months if she was noncompliant. The court advised Cindy of that possibility and she expressed her understanding. Nevertheless, she did not sufficiently comply and the court terminated her services.

Once the juvenile court terminates a parent's reunification services, its focus shifts from reunifying the family to establishing a permanent home for the child. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H.*).) Adoption is the preferred permanent plan. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) Consequently, the juvenile court's focus at the section 366.26 hearing is on whether it is likely the child will be adopted and if so, order termination of parental rights. (*Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) If, as in this case, the child is likely to be adopted, the juvenile court must terminate parental rights unless the parent proves there is a compelling reason for finding that termination would be detrimental to the child under any of the circumstances listed in section 366.26, subdivision (c)(1)(B).

In this case, Cindy's attorney argued adoption would be detrimental to the children because of the strong bond she shared with them, thus invoking the exception commonly referred to as the "beneficial relationship" exception found in section 366.26, subdivision (c)(1)(B)(i). The exception provides that if the juvenile court finds by clear and convincing evidence that the child is likely to be adopted, the court must terminate parental rights and order the child placed for adoption unless the court finds that termination would be detrimental to the child because the parent maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.

To meet the burden of proof to establish a beneficial relationship, "the parent must show more than frequent and loving contact, an emotional bond with the child, or

pleasant visits—the parent must show that he or she occupies a parental role in the life of the child."  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527.)

Here, Cindy was unable to show that terminating her parental rights would be detrimental to Serena and Ray under the "beneficial relationship" exception.  She had not visited the children for nearly a year.  Therefore, she could not show that she maintained regular visitation and contact with them.  Further, even if they remained strongly bonded to her, she could not show she occupied a parental role when she was completely absent from their lives.

We conclude Cindy failed to show good cause that an arguable issue exists on this record and dismiss the appeal.

## DISPOSITION

This appeal is dismissed.